UNITED STATES DISTRICT COURT

**FILED**

DISTRICT OF SOUTH DAKOTA

**OCT 1 3 2005**

WESTERN DIVISION

CLERK

| | | |
|---|---|---|
| PEDRO GARCIA CHAVEZ,<br>a/k/a/ Alfredo Garcia Chavez, | ) | CIV. 04-5027 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATIONS |
| | ) | |
| DOUGLAS WEBER, Warden,<br>South Dakota State Penitentiary, and<br>LARRY LONG, Attorney General,<br>State of South Dakota, | ) | |
| | ) | |
| Respondents. | ) | |

Petitioner, Pedro Garcia Chavez, filed an application for writ of habeas corpus in federal court on March 15, 2004. The respondent filed their answer to the petition on June 15, 2004. Petitioner filed his responsive brief on July 15, 2005.

## PROCEDURAL HISTORY

Petitioner was originally indicted in federal court on the same charges he was later convicted of in state court, and which are the basis for this writ of habeas corpus. A suppression hearing was held in federal court, and after hearing all the evidence, the magistrate judge found and recommended that the motion to suppress be granted. The United States district judge reviewed the case de novo, and entered an opinion granting the motion to suppress finding that there was no probable cause to support a search of the vehicle. The government dismissed the case, and declined to file an appeal to the Eighth Circuit. Next, the state of South Dakota indicted the defendant for the same charges in state court. The state court judge denied the motion to suppress. Later, a jury convicted the petitioner. Petitioner appealed the conviction to the South Dakota Supreme Court which affirmed his conviction in State of South Dakota v.

<u>Pedro Garcia Chavez a/k/a Alfredo Garcia Chavez</u>, 2003 S.D. 93.  There were two justices voting to affirm the conviction, one justice concurring, and two dissenting.  Thereafter, petitioner filed a state writ of habeas corpus alleging grounds similar to his federal writ of habeas corpus, and this petition was also denied.  Petitioner filed for a certificate of probable cause to appeal his denial to the South Dakota Supreme Court which was denied by the trial judge, and finally, petitioner did not file with the State Supreme Court an application for certificate of probable cause.

## DECISION

Respondents allege that the South Dakota Supreme Court found that the traffic stop was appropriate, that the drug dog alerted to the presence of drugs, and that those findings were affirmed by the South Dakota Supreme Court.  They further allege that under the doctrine of <u>Stone v. Powell</u>, 428 U.S. 465 (1976), federal court is prohibited from considering suppression of evidence where the petitioner had a full opportunity to litigate the issues in state court. Petitioner alleges that the state court action is contrary to federal law, or an unreasonable application thereof, and therefore, can be raised pursuant to 28 U.S.C. § 2254(d)(1)(2).

## ISSUES

**ISSUE ONE.  Is the state Supreme Court opinion contrary to federal law, or an unreasonable application thereof?**

In this case, all the judges that have looked at it have been struggling with the issue of whether the dog alerted to the presence of drugs providing a probable cause to search the vehicle.  The federal judges found, after hearing the evidence, that although the traffic stop was legal based upon a dangling object from the rearview mirror, the continued detention and questioning, without a <u>Miranda</u> warning, could not justify the expansion of the traffic stop.  The

2

federal court also found, based on the evidence available to the officers at the time, that the drug dog did not alert so as to allow them probable cause to search the vehicle.

At the state court suppression hearing, Mike Thomas, a South Dakota Highway Patrolman, testified that he was present when the dog went around the vehicle. He is not a trained canine officer, but he has seen Crocket alert before. He testified that just before Crocket was given the toy, the dog stiffened a bit, Motions Hearing transcript, page 85, line 17. He further testified that he had seen Crocket alert before, and that he normally stiffens up, takes deeper breaths, and at times he will go crazy, and start scratching and biting the area where the things are. Motions Hearing transcript, page 86, line 13-17. He observed none of that behavior this time.

Kyle Heyen testified as a dog training expert who trains and sells dogs for the South Dakota Highway Patrol. Mr. Heyen also trained Crocket. He testified on page 49, line 11, that he was paid $250 per hour to testify. He said that although the dog was not visible on the video tape when he believes the dog alerted, he listened to the video tape some twelve times, and felt the dog was breathing heavily, like a Hoover vacuum cleaner. This occurred just before Trooper Swets gave Crocket a toy as a reward, and the video does show this, together with the dog wagging his tail. The state Supreme Court, in their opinion, listened to the tape, and some Justices felt that they could hear a little bit of breathing, and others could only hear the breathing of Trooper Swets. Trooper Brian Swets also testified that he believed the dog alerted at the vehicle near the license plate in the back. At least on this evidence, the trial court and the state Supreme Court found that the dog did alert, and therefore, affirmed the convictions.

These findings, however, are in conflict with the federal case law. In Terry v. Ohio, 392 U.S. 1, the court emphasized the term "reasonable," and said,

> And in justifying the particular intrusion the police officer must be
> able to point to specific and articulable facts which, taken together
> with rational references from those facts, reasonably warrant that
> intrusion . . . And in making that assessment it is imperative that
> the facts be judged against an objective standard; would the facts
> available to the officer at the moment of the seizure or the search
> warrant a man of reasonable caution in the belief that the action
> taken was appropriate?

Thus, the inquiry is limited to the information available to the officer at the time, and cannot be

later buttressed by the opinion of some expert who looked at the video at a later date.

Under current federal case law, we must look at the facts available to the officer at the

time he made the decision to search.  In this case, we have the benefit of a video tape with audio

portions to view the scene of the search.  Trooper Brian Swets was the dog handler who is

trained, experienced, and conducted the drug dog search.  He testified that his dog, Crocket, did

alert on the trunk's seam of the vehicle during the initial search, and that thereafter he rewarded

him with a toy.  However, on the video tape, the audio portion clearly records Swets as saying to

the other law enforcement officers on the scene, "He's got a lot of cash in his pocket, too.

Crocket showed some interest . . . "  Videotape transcript January 22, 2001, page 11.  Later,

Trooper Swets says, "He's got false documents.  That's a crime.  We got probable cause for a

search.  I think that's what I'm gonna go ahead with."  At no time did Trooper Swets indicate to

the other officers that the dog alerted to the vehicle.  He simply indicated the dog showed some

interest.  There is nothing on the videotape which would indicate that the dog alerted to this

vehicle.  The dog did not bite, scratch, wag his tail, sniff loudly or do anything else which drug

dogs normally do in the presence of drugs.  However, it is interesting that he never indicated that

to the law enforcement officers on the scene.  In fact, at the scene, he said, "This guys got false

documents.  That's a crime.  We got probable cause for a search.  I think that's what I'm gonna

4

go ahead with." This statement obviously indicated that Trooper Swets thought that his search was based upon false documents, and not his dog alerting. There are no cases cited by the state which would indicate a Mexican national traveling in South Dakota without a green card would be subject to a search of his vehicle or that this would constitute probable cause. It is also interesting that although Trooper Swets testified his dog alerted at the trunk seam, he did not commence his search at the trunk, but instead started his search at the vehicle's sun roof, saying it looked like it was out of alignment.

In dealing with drug dog searches, the words, "alert, showing interest, coming to odor," all have some specific meaning. There is no question that after a dog alerts to a vehicle that it would constitute probable cause for a search under the Fourth Amendment. See United States v. Place, 462 U.S. 696 (1983). After a dog alerts to the exterior of a vehicle, the officers have probable cause to search the vehicle's interior without a warrant. See also United States v. Bloomfield, 40 F.3d 910 (8th Cir. 1994). Without an alert, law enforcement officers lack the probable cause necessary to search the vehicle. See United States v. Jacobs, 986 F.2d 1231 (8th Cir. 1993). A dog that shows "interest" in a vehicle is not equated with the term of art "alert." See id. At 1234.

In the state Supreme Court opinion, even the concurring justice indicated that given the testimony of Trooper Swets, without the state's expert, his testimony would be equivocal. That, of course, would mean the state would fail to meet their burden of proof, and the case outcome would be in accord with existing federal case law. The persuasive evidence is found on the video tape, and in the statements of Trooper Brian Swets. The evidence presented to the state courts after the fact through expert witness testimony, and others, is of little relevance when at the time of the search Trooper Swets stated the dog did not alert, only showed interest, and

5

further, that they were going to search on the basis of forged documents.

Therefore, it is my finding and recommendation that because the state Supreme Court opinion is contrary to prevailing federal case law that the writ of habeas corpus be granted.

**ISSUE TWO.  The extended questioning and detention on the highway of the alleged aliens which was conducted in a custodial fashion without the benefit of *Miranda*.**

This, of course, would also be a violation of the Fifth Amendment, and additional reasons for the writ of habeas corpus to be granted.

Dated this 13 day of October, 2005.

BY THE COURT:

MARSHALL P. YOUNG
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

The parties have ten (10) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require de novo review by the District Court.

[Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990)]
[Nash v. Black, 781 F.2d 665 (8th Cir. 1986)]